**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

KHADIJAH Z. ABLE, )
Plaintiff, )
) Case No. 1:18-cv-01372-(KBJ)
WASHINGTON METROPOLITAN )
AREA TRANSIT AUTHORITY )
Defendant. )

**THIRD AMENDED COMPLAINT**
(Jury Trial Demanded)

COMES NOW Plaintiff Khadijah Z. Able (hereinafter "Plaintiff"), by and through her attorney of record, and files this her *Complaint* for damages against Defendant Washington Metropolitan Area Transit Authority (hereinafter "Defendant WMATA") and for cause would show unto the Court the following:

**PARTIES**

1. Plaintiff is an adult resident citizen of Maryland, residing at 4416 Forestview Avenue, Overlea, Maryland, 21206.
2. Defendant Washington Metropolitan Area Transit Authority (WMATA) is a non-federal tri-jurisdictional government agency authorized by Congress that operates transits service and headquartered in Washington, DC at 600 Fifth Street, NW, Washington DC, 20001.

**JURISDICTION AND VENUE**

3. This action is being brought pursuant to 28 U.S.C. Section 1331, 28 U.S.C. Section 1343(a)(3) and 42 U.S.C. Section 1983 and includes any and all federal law claims plead herein for which jurisdiction and venue is attached.

4. Venue is proper in this district, pursuant to 28 U.S.C. Section 1391 because Defendant WMATA is located in the district and a substantial part of the events and omissions giving rise to this claim occurred in this judicial district.

**FACTS**

5. In May 2012, Plaintiff, an African American woman, began her employment as a bus operator with Defendant WMATA.
6. Since Plaintiff's employment with Defendant, she has endured sexual harassment and hostility from her superiors within WMATA.
7. In August 2012, Plaintiff met with her supervisor, Joseph Barber, to discuss a bus accident. During that meeting, supervisor Joseph Barber smiled at Plaintiff and said, "you look like you taste good" and talked to her about joining him on a date. Supervisor Barber attempted to use the bus accident to pressure Plaintiff into sexual relations. When she refused his advances, and Supervisor Barber gave Plaintiff a written reprimand for a "preventable minor" accident although she was not at fault.
8. Appalled and shocked, Plaintiff reported this incident to the union shop; however, Supervisor Barber continued to harass Plaintiff, indicating that she should "be happy to still have a job." On or about October 31, 2012, WMATA overturned the reprimand.
9. On or about January 28, 2013, Plaintiff sustained work-related injuries and was hospitalized due to a WMATA Metrobus natural gas leak. On January 29, 2013, Plaintiff informed the union about her injuries as well as the harassment by her supervisor.
10. In April 2013, Plaintiff returned to work only to be victimized by a fellow employee who forcefully placed his hands on the Plaintiff against her will. Plaintiff reported this incident to two supervisors but received no response.

11. In December 2013, Plaintiff was transferred to the Montgomery Division. Even with this change, Plaintiff was still victimized by her new supervisor, Paul Hobbs. Supervisor Hobbs inappropriately shared his personal cellular phone number with Plaintiff and subjected her to unwanted physical act acts such as holding and rubbing Plaintiff's hand. Supervisor Hobbs asked Plaintiff why she didn't call to "hook up." Additionally, Plaintiff's supervisor propositioned her for sex and questioned Plaintiff's sexual orientation by saying, "you sure you don't want to be with a man, you don't know what you are missing."

12. Further, from May 2014 through 2015, Plaintiff endured constant sexual advances as Supervisor Hobbs asked for "hook ups" with "no strings attached." He also approached Plaintiff and another employee and recommended that they engage in a "threesome." When Plaintiff returned from a work-related injury in February 2015, Supervisor Hobbs informed her that she "done got thick in the right places." Thereafter, Plaintiff met with other female employees who had also reported Supervisor Hobbs' sexual harassment and advances.

13. On or about July 19, 2015, Plaintiff was involved in a "non-preventable" bus incident. On July 16, 2015, Plaintiff met with Supervisor Hobbs to sign paperwork associated with this incident, but was continuously harassed. He again said to Plaintiff, "you don't know what you're missing…come to the other side." When Plaintiff rejected his sexual advances, Defendant retaliated against her by claiming the incident was in fact "preventable" and issued a reprimand.

14. On or about June 29, 2015, Plaintiff's Metrobus sustained a flat tire. The on-duty supervisor determined that Plaintiff was without fault. On July 25, 2015, however, Defendant Hobbs charged Plaintiff with a preventable minor-incident and suspended her for two days.

15. On or about July 27, 2015, Plaintiff, along with her union representative, met with Superintendent Walkup to discuss the above referenced work incidents and subsequent reprimands. Additionally, Plaintiff reported all incidents of sexual harassment. Superintendent Walkup subsequently reversed the preventable-minor charge and noted that other female employees had complained about Supervisor Hobbs' inappropriate conduct.

16. Notably, Defendant WMATA contended that the two-day suspension never effectuated; however, Plaintiff was held out of work for two days and was forced to use personal leave.

17. Due to the stress of and trauma of these incidents, Dr. Copper Lucas of the WMATA Employee Assistance Program placed Plaintiff on Stress Leave and advised her to see a therapist.

18. In December 2015, upon confirmation of these incidents, Defendant WTMA terminated Supervisor Joseph Barber. In February 2016, however, Defendant Hobbs was transferred back to the Montgomery Division with Plaintiff.

19. Plaintiff was discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended, because she engaged in the protected activity of voicing her complaints of discrimination and harassment.

20. Additionally, Plaintiff sustained a myriad of medical issues during her employment with WTMA. After the accident, Plaintiff experienced significant complications due to neck and back pain, leaving her unable to sit for long periods of time.

21. In January 2018, Plaintiff made a request for modified work duty and provided sufficient medical documentation in support thereof.

22. Plaintiff provided the sufficient documentation to Jasmine Mitchell who handles ADA Accommodations on for Defendant.

23. On May 1, 2018, Dr. Paul Olumuyiwa, diagnosed Plaintiff with spondylosis related to her work-related injury. Dr. Olumuyiwa placed Plaintiff on light work duty restrictions.

24. Dr. Olumuyiwa's modified duty restricts were in place from December 21, 2017 until June 12, 2018.

25. Plaintiff continued to comply and produced additional medical documentation in support of her request; however, Plaintiff's requests were denied.

26. Ultimately on June 1, 2018, Plaintiff was terminated for failure to return to work.

**ADMINISTRATIVE PROCEDURE**

27. In 2015, Plaintiff filed charges of discrimination, satisfying the requirements of 42 U.S.C. Section 2000(e) with the EEOC in Baltimore, MD. Such charge was filed within one hundred and eighty (180) days after the last unlawful employment practice occurred.

28. The EEOC conducted an investigation on both claims. On March 9, 2018, the EEOC determined that it was unable to conclude that the information obtained establishes a violation of the statues.

29. The *Complaint* is being filed within ninety (90) days of the Plaintiff's receipt of the Notice of Right to Sue. Plaintiff has complied with all statutory and administrative prerequisite to filing suit.

**CAUSES OF ACTION**

**COUNT I**
**SEX DISCRIMINATION**

30. Plaintiff re-alleges all prior paragraphs of the *Complaint* as if set out herein in full.

31. Plaintiff is a member of a protected class who has been consistently subjected to actions creating a hostile working environment for Plaintiff because of her gender and/or sex in violation of Title VII of the Civil Rights Act of 1964.

32. The acts and volitions of Defendant resulted in a knowing, willful, and intentional violation of Plaintiff's rights guaranteed under Title VII of the Civil Rights Act of 1964. Such unlawful employment practices violate 4 U.S.C. Section 2000e-3.

33. As a direct and proximate result of Defendant unlawful and discriminatory conduct toward Plaintiff, Plaintiff has lost wages and benefits and has sustained other pecuniary loss.

34. Defendant' discriminatory practices, insults, contempt, and disdain have been demeaning to Plaintiff and have caused her to suffer deep pain, humiliation, anxiety, and emotional distress.

35. The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory rights of Plaintiff.

**COUNT II**
**<u>RETALIATION</u>**

36. Plaintiff re-alleges all prior paragraphs of the *Complaint* as if set out herein in full.

37. Plaintiff engaged in activity protected under Title VII of the Civil Rights Act of 1964. Defendant and agents and employees of Defendant, retaliated against Plaintiff after she made reports of discrimination to the EEOC. Plaintiff was retaliated against by unjustly subjecting her to unjust scrutiny, suspensions, and exclusions

38. Defendant has no legitimate reason for any such acts.

39. Defendant's actions demonstrate a direct and casual connection between Plaintiff invoking her constitutional rights and the resulting termination by her employer.

40. Such unlawful practices violate 42 U.S.C. Section 2000e-5(b).

**COUNT III**
**<u>CONSTITUTIONAL VIOLATIONS UNDER 42 U.S.C. SECTION 1981</u>**

41. Plaintiff re-alleges all prior paragraphs of the *Complaint* as if set out herein in full.

42. Defendant subjected Plaintiff to an unwelcomed hostile work environment based on her race-African American- and sexual orientation, through severe and pervasive actions that altered the conditions of her employment, including, but not limited to, subjecting her to unwelcomed daily sexual advancements, harassment, and ridicule; subjecting her to discrimination; interfering with her work performance; not addressing his complaints about discrimination, harassment, and disparate treatment.

43. Despite Plaintiff's repeated complaints to supervisors, about this hostile work environment, Defendant failed to take any appropriate action to redress the discriminatory and hostile work environment conditions imposed on her.

44. The aforementioned acts of Defendants were willful, reckless, and malicious acts of unlawful discrimination against Plaintiff because of her race and have deprived Plaintiff the enjoyment of all benefits, privileges, terms, and conditions of his employment relationship in violation of 42 U.S.C. § 1981.

45. By Defendant' actions, it shows a direct and casual connection between Plaintiff invoking her constitutional rights. Such unlawful employment practices violate Section 1981, Title VII of the Civil Rights Act of 1964, as amended, as well as 42 U.S.C. Section 2000e, et. seq.

**COUNT IV**
**VIOLATIONS UNDER THE AMERICANS WITH DISABILITIES ACT**

46. Plaintiff re-alleges and incorporates herein by reference the above and foregoing paragraphs as set out herein.

47. Plaintiff requested accommodations in accordance with rights established under the Americans with Disabilities Act. (ADA).

48. Defendant has intentionally discriminated against Plaintiff because of her disability and/or perceived disability as set forth under the Americans with Disabilities Act and has repeatedly refused her requests for reasonable accommodation.

49. Defendant has further violated the law by its consistent and repeated refusal to provide the Plaintiff with the reasonable and feasible accommodations she has requested.

50. As a direct and proximate result of Defendant's unlawful discriminatory conduct toward Plaintiff, she has lost wages and benefits and has sustained other pecuniary loss.

51. Defendant's retaliatory practices, insults, contempt, and disdain have been demeaning to Plaintiff and have caused her to suffer deep pain, humiliation, anxiety, and emotional distress.

52. The unlawful actions of Defendant complained of above were intentional, malicious, and taken in reckless disregard of the statutory and common law rights of Plaintiff.

**COUNT V**
**VIOLATIONS UNDER TITLE I OF THE AMERICANS WITH DISABILITIES ACT**

53. Plaintiff' realleges all prior paragraphs of the *Complaint* as if set out herein in full.

54. Title I of the ADA prohibits covered entities from discriminating against a qualified individual on the basis of disability in regard to application procedures, hiring, and other terms, conditions, and procedures of employment. 42 U.S.C. § 12112(a).

55. Title I of the ADA requires covered entities to engage employees  to engage employees with known disabilities in an interactive process to assess the nature of the disability and how the employer might reasonably accommodate that disability, where the employer believes that disability might prevent the applicant from performing an essential job function. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.2(o)(3).

56. WMATA's Conduct in this Complaint constitutes discrimination on the basis of disability in violation of Title I of ADA, including the following, but not limited to, the following ways:

    a. WMATA failed to engage Plaintiff in an interactive process concerning the essential job functions of the position, Plaintiff's ability to perform those functions, and the possibility of accommodations for Plaintiff's disability, despite the fact hat she is a qualified person with a disability who could perform the essential functions of the position, with or without accommodation, in violation of Title I of the ADA.

    b. WMATA failed to provide Plaintiff a reasonable accommodation, despite the fact that she is a qualified person with a disability who could perform the essential functions of the position, with or without accommodation, in violation of Title I of the ADA.

57. As a consequence of WMATA's discriminatory conduct, Plaintiff has suffered and continues to suffer harms, including emotional distress, lost income, lost benefits, mental anguish, pain and suffering, anxiety, loss of enjoyment of life, and humiliation.

**COUNT VI**
**VIOLATIONS UNDER TITLE II OF THE AMERICANS WITH DISABILITIES ACT**

58. Plaintiff' realleges all prior paragraphs of the *Complaint* as if set out herein in full.

59. Title II of the ADA prohibits covered entities from discriminating against a qualified individual on the basis of disability in regard to the participation in or the benefits of the services, programs, or activities of the public entity. Title II further prohibits public covered entities from discriminating against qualified individuals with a disability. 42 U.S.C. § 12132.

60. Title II of the ADA defines a qualified individual as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential requirements for the receipt of service or the participation in programs or activities provided by a public entity. 42 § 12131(2).

61. Under Title II of the ADA, "public entity" includes any State or local government" and "any department, agency, … or instrumentality of a State." 42 U.S.C. § 12131(a).

62. WMATA's Conduct in this Complaint constitutes discrimination on the basis of disability in violation of Title II of ADA, including the following, but not limited to, the following ways:

    a. WMATA failed to engage Plaintiff in an interactive process concerning the essential job functions of the position, Plaintiff's ability to perform those functions, and the possibility of accommodations for Plaintiff's disability, despite the fact hat she is a qualified person with a disability who could perform the essential functions of the position, with or without accommodation, in violation of Title II of the ADA.

    b. WMATA failed to provide Plaintiff a reasonable accommodation, despite the fact that she is a qualified person with a disability who could perform the essential functions of the position, with or without accommodation, in violation of Title II of the ADA.

63. WMATA further denied Plaintiff the right the participate in employment activities in violation of Title II of the ADA despite Plaintiff's classification as a qualified individual with a disability.

64. As a consequence of WMATA's discriminatory conduct, Plaintiff has suffered and continues to suffer harms, including emotional distress, lost income, lost benefits, mental anguish, pain and suffering, anxiety, loss of enjoyment of life, and humiliation.

**DAMAGES**

65. As a consequence of the forgoing misconduct of Defendant, Plaintiff sustained economic damages, pain and suffering, great mental stress, depression, insomnia, shock, and humiliation.

66. As a consequence of the forgoing conduct of Defendant, Plaintiff has damages in an amount exceeding the jurisdictional requirements of the Court.

**RELIEF**

67. Plaintiff requests that the Court issue the following relief:

    a. Enter declaratory relief declaring that Defendant have engaged in sex discrimination, race discrimination, retaliation, and constitutional violations;

    b. Award Plaintiff compensatory and punitive damages for all the mentioned causes of action in an amount to be determined by a jury of her peers;

    c. Award Plaintiff attorney's fees, cost and expenses of litigation; and

    d. Award such other relief to which Plaintiff may be entitled to under law.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff demands judgment against Defendant in an amount exceeding the jurisdictional requirements of this Court, all together with Court costs, including attorney's fees, plus pre and post judgment interest, and for any other relief which this Court deems just and proper.

Respectfully submitted, this the 30th day of October 2019.

**Khadijah Z. Able**

/s/ Charles Tucker, Jr.
CHARLES TUCKER, DC Bar #993515
TUCKER MOORE GROUP, LLP
8181 Professional Place, Suite 207
Hyattsville, Maryland 20785
Charles@tuckerlawgroupllp.com
Office: 301-577-1175