**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KHADIJAH Z. ABLE,** | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **Case No. 1:18-cv-01372- (KBJ)** |
| | : |
| | : |
| **WASHINGTON METROPOLITAN** | : |
| **AREA TRANSIT AUTHORITY** | : |
| | : |
| **Defendant.** | : |
| _____ | : |

### DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and the entire record of the case, the Defendant, Washington Metropolitan Area Transit Authority (WMATA), hereby moves this Court for summary judgment. In support of this motion, the Defendants submit the attached Memorandum of Points and Authorities, Statement of Material Facts Not in Dispute, Exhibits, and proposed Order.

WMATA is entitled to summary judgment in its favor on both Count I (Sex Discrimination-Hostile Work Environment) and Count II (Retaliation) of Plaintiff's Third Amended Complaint brought under Title VII of the Civil Rights Act of 1964 because Plaintiff failed to file suit within ninety days of receipt of her EEOC right-to-sue letter. In the alternative, Count I of Plaintiff's Third Amended Complaint must be dismissed because the alleged incidents of sexual harassment were not sufficiently severe or pervasive to rise to the level of a hostile work environment and WMATA exercised reasonable care to prevent and promptly correct the alleged harassing behavior once Plaintiff informed WMATA management.

1

Count II of Plaintiff's Third Amended Complaint alleging retaliation under Title VII of the Civil Rights Act of 1964 must be dismissed because Plaintiff was terminated for a non-retaliatory reason— misconduct for taking leave without authorization, and none of the allegations raised by Plaintiff were sufficiently severe or pervasive to rise to the level of a retaliatory hostile work environment.

Count III of Plaintiff's Third Amended Complaint alleging race and gender discrimination under 42 U.S.C. § 1981 must be dismissed because WMATA, as an arm of the state, does not qualify as a "person" within the meaning of § 1983 and § 1981, and thus enjoys Eleventh Amendment immunity from such claims. *White v. WMATA*, 303 F.Supp.3d 5, 11 n.1 (D.D.C. 2018) (citing *Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir.), *cert denied*, 531 U.S. 1052 (2000)).[1]

Count IV of Plaintiff's Third Amended Complaint alleging a failure to accommodate under the Rehabilitation Act of 1973 must be dismissed because the Plaintiff was terminated for a non-discriminatory and non-retaliatory reason before completion of the interactive process and

---

[1] In addition, Plaintiff's Third Amended Complaint alleges discrimination due to gender, not race and 42 U.S.C. § 1981 only addresses allegations of race discrimination. *Allen-Brown v. District of Columbia,* 54 F.Supp.3d 35, 43-4 (D.D.C. 2014) (citing *Runyon v. McCrary*, 427 U.S. 160, 167 (1976)).

there is no duty on an employee to stop impending discipline just because an employee makes an accommodation request. See *Halpern v. Wake Forest Univ. Health Sciences*, 669 F.3d 454, 464-65 (4th Cir. 2012); *Jones v. Nationwide Life Insurance Co.*, 696 F.3d 78 (1st Cir. 2012).

Respectfully submitted,

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY


*/s/ Michael K. Guss*
Michael K. Guss #465171
Senior Counsel
WMATA-COUN
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-1468

# Table of Contents

**DEFENDANT WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY'S, MOTION FOR SUMMARY JUDGMENT** ................................... 1

**Table of Contents** ................................................................................................. i

**Table of Authority** ................................................................................................ ii

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT** ........................................ 5

  **Statement of Facts** ............................................................................................ 5

  **Argument** ......................................................................................................... 9

    **WMATA Is Entitled to Summary Judgment in Its Favor on Counts I (Sex Discrimination) and II (Retaliation) of the Third Amended Complaint Because She Failed to File Either Claim Within the 90-day Statute of Limitations Period under Title VII.** ............................................................................................... 9

    **WMATA Is Entitled to Summary Judgment in Its Favor on Count I of Her Complaint Alleging Sex Discrimination Under A Hostile Work Environment Theory** ........................................................................................ 11

    **WMATA Is Entitled to Summary Judgment in Its Favor Because Plaintiff Cannot Prove Retaliation** ................................................................................. 16

    **WMATA Enjoys Eleventh Amendment Sovereign Immunity from 42 U.S.C. § 1981 Claims.** ........................................................................................................ 21

    **Plaintiff's Claim in Count IV of Her Third Amended Complaint Alleging a Failure to Accommodate Under the Rehabilitation Act Fails Because WMATA Was Not Required to Suspend Pending Discipline Just Because Plaintiff Made an Accommodation Request** .................................................................................. 21

**Conclusion** ........................................................................................................ 24

**CERTIFICATE OF SERVICE** .............................................................................. 27

i

# Table of Authority

## Cases

*Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284 (D.C. Cir. 1998) ...............................................22

*Allen-Brown v. District of Columbia,* 54 F.Supp.3d 35, 43-4 (D.D.C. 2014) ....................21

*Badwal v. Univ. of D.C.,* 139 F.Supp.3d 295, 308 (D.D.C. 2015)......................................22

*Baird v. Gotbaum,* 662 F.3d 1246, 1251 (D.C. Cir. 2011) .........................................12, 18

*Baldwin County Welcome Ctr. V. Brown,* 466 U.S. 147, 148 n.1 (1984)............................10

*Bergbauer v. Mabus,* 934 F.Supp.2d 55, 72 (D.D.C. 2013) ................................................13

*Burlington Indus. v. Ellerth,* 524 U.S. 742 (1998) ..............................................................15

*Davis v. Coastal Int'l Sec., Inc.,* 275 F.3d 1119, 1123 (D.C. Cir. 2002) ............................13

*Dewitt v. Sw. Bell Tel. Co.,* 845 F.3d 1299, 1315-16 (10th Cir. 2017)...............................23

*Drasek v. Burwell,* 121 F.Supp.3d 143, 154 (D.D.C. 2015) ...............................................22

*Faragher v. City of Boca Raton,* 524 U.S. 775, 807 (1998) ...............................................15

*Guzman v. Brown County,* 884 F.3d 633, 642 (7th Cir. 2018)............................................23

*Halpern v. Wake Forest Univ. Health Sciences,* 669 F.3d 454, 464-65 (4th Cir. 2012)........3

*Halpern v. Wake Forest Univ.,* 669 F.3d 454, 465 (4th Cir. 2012) .....................................22

*Hamilton v. Geithner,* 666 F.3d 1344, 1357 (D.C. Cir. 2012)............................................18

*Hammel v. Marsh USA, Inc.,* 79 F.Supp.3d 234, 242 (D.D.C. 2015)..................................10

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993) ....................................................20

*Hussain v. Nicholson,* 435 F.3d 359, 365 (D.C. Cir. 2006) ...............................................20

*Johnson v. Univ. of Cincinnati,* 215 F.3d 561 (6th Cir.)......................................................2

*Jones v. Nationwide Life Ins., Co.,* 696 F.3d 78, 90 (1st Cir. 2012)...................................23

*Jones v. Nationwide Life Insurance Co.,* 696 F.3d 78 (1st Cir. 2012)..................................3

*Mack v. WP Company,* LLC, 923 F.Supp.2d 294, 298 (D.D.C. 2013).................................10

*Martinson v. Kinney Shoe Corp.,* 104 F.3d 683, 686 n.3 (4th Cir. 1997)...........................23

*McElwee v. County of Orange,* 700 F.3d 635, 644 (2nd Cir. 2012) ....................................23

*McGrath v. Clinton,* 666 F.3d 1377, 1380 (D.C. Cir. 2012) ..............................................17

*Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 67 (1986) ........................................................13

*National R.R. Passenger Corp v. Morgan,* 536 U.S. 101, 109 (2002) ................................11

*Runyon v. McCrary,* 427 U.S. 160, 167 (1976)....................................................................2

*Taylor v. Solis,* 571 F.3d 1313, 1318 (D.C. Cir. 2009).......................................................13

*Thompson v. WMATA,* No. 01-7026, 2001 WL 1154420, at *1 (D.C. Cir. Aug. 9, 2001) ...........21

*Univ. of Texas Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 350-51 (2013)..............................18

*Ward v. McDonald,* 762 F.3d 24, 31 (D.C. Cir. 2014) .......................................................22

*White v. WMATA,* 306 F.Supp.3d 5, 11 (D.D.C. 2018) ...............................................2, 21

*Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982) .........................................11

## Statutes

29 U.S.C. § 794(a)...............................................................................................................22

42 U.S.C. § 1981 .............................................................................................................2, 21

42 U.S.C. § 2000e-5(f)(1)....................................................................................................10

*Fed. R. Civ. P. 56* ...............................................................................................................1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KHADIJAH Z. ABLE, | : |
| | : |
| **Plaintiff,** | : |
| | : |
| v. | : **Case No. 1:18-cv-01372- (KBJ)** |
| | : |
| | : |
| WASHINGTON METROPOLITAN | : |
| AREA TRANSIT AUTHORITY | : |
| | : |
| **Defendant.** | : |
| _____ | : |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**THEIR MOTION FOR SUMMARY JUDGMENT**

**Statement of Facts**

Plaintiff Khadijah Z. Able is an African-American female. (S.M.F. ¶ 1). Plaintiff was hired on May 29, 2012 as a student bus operator with WMATA. (S.M.F. ¶ 2); [Dkt. 28-2]. On July 22, 2012, Plaintiff became a full-time WMATA bus operator. (S.M.F. ¶ 2); [Dkt. 28-2]. On July 16, 2012, shortly before becoming a permanent WMATA employee, Plaintiff signed a Certification Statements Checklist acknowledging receipt of various WMATA policies including WMATA's Sexual Harassment Policy Statement. (S.M.F. ¶3); [Dkt. 28-3]. Policy/Instruction 7.1.2 was WMATA's Sexual Harassment Policy in effect during all relevant times in Plaintiff's Third Amended Complaint. (S.M.F. ¶ 3); [Dkt. 28-4].

Plaintiff alleges that on or about August 2012, while she was a bus operator in the Montgomery Bus Division, an office manager by the name Joseph Barbour made a "inappropriate" comment to her while discussing an accident she had with her bus (Able Dep.

5

24:1-25:22, May 6, 2019). Plaintiff told a representative of her union — Derrick Mallard— about

Mr. Barbour's comments, but she did not report the incident to WMATA's OEEO office at the

time and she was not sure if Mr. Mallard told her supervisor about the comment (Able Dep. 26:1-

7, 29:9-19).

In or around December 2013, Plaintiff was assigned to the Montgomery Bus Division

(Able Dep. 54:2-6). At that time, Donald Tapp was the Assistant Superintendent for the division,

while Paul Hobbs served as an Office Manager (Able Dep. 54:2-12). Plaintiff alleges that weeks

after an exchange of phone numbers, Hobbs asked Plaintiff for a "threesome" after she told him

she was gay (Able Dep. 55:2-56:10). Plaintiff also alleges that during that time, there were two

separate instances of Hobbs touching her hand when the two exchanged paperwork (Able Dep.

58:1-60:3). The first time Hobbs touched her hand, Plaintiff told Hobbs to stop because she is a

gay woman and the second time, Plaintiff told Hobbs she was not interested (Able 60:21-22-

62:12). Plaintiff did not report either of the above incidents to the Office of Civil Rights nor to her

immediate supervisors at the time they occurred (Able 63:4-16, 73:1-22).

On June 19, 2015, Plaintiff was charged with a Preventable-Minor accident and given a

written reprimand for hitting a fixed object with her bus. (S.M.F. ¶ 8); [Dkt. 28-7]. Ten days later,

on June 29, 2015, Hobbs attempted to discipline Plaintiff for another Preventable-Minor accident

involving a flat tire on the bus Plaintiff was driving. (S.M.F. ¶ 10); [Dkt. 28-8]. Hobbs initially

recommended a two-day suspension with one day of paid training for the June 29, 2015 accident,

which was in accordance with the Bus Disciplinary Matrix signed by WMATA and Plaintiff's

union; however, the discipline was overturned by Montgomery Bus Superintendent Terri Walkup

and any vacation days used for the suspension was refunded to her (Able Dep. 85-5-18). (S.M.F.

¶¶ 6, 11); [Dkts. 28-6, 28-8, 28-9, 28-38]. Plaintiff testified that Hobbs was moved out of the Montgomery Bus Division after she filed her internal charge with WMATA's OEEO office (Able Dep. 116:22- 117:1-7). Plaintiff reports that from the time Hobbs was moved out of the Montgomery Bus Division because of the internal investigation to the time she was promoted to Street Operations Manager ("SOM"), there were no incidents of sexual harassment against her by Hobbs (Able Dep. 121:6-15).

On September 10, 2015, Plaintiff filed an internal complaint of sexual harassment in WMATA's Office of Equal Employment Opportunity against Hobbs (Able Dep. 92:9-16; 100:20-101:15). (S.M.F. ¶ 12); [Dkt. 28-11]. On October 27, 2015, Plaintiff filed Charge of Discrimination #531-2015-02031 ("Title VII Charge") alleging gender discrimination, race discrimination and retaliation under Title VII. (S.M.F. ¶ 13); [Dkt. 28-12]. On February 10, 2016, WMATA's OEEO office mailed Plaintiff a letter detailing the results of its internal investigation into Plaintiff's allegations of sexual harassment by Hobbs. (S.M.F. ¶ 14); [Dkt. 28-13].

On February 16, 2016, Plaintiff is promoted to a SOM, which is a non-representative position. (S.M.F. ¶ 15); [Dkt. 28-14]. On September 21, 2016, Plaintiff signed a letter acknowledging that her position as SOM was at-will. (S.M.F. ¶ 16); [Dkt. 28-15]. In a May 30, 2017 email to Yasmin Mitchell of WMATA's Office of Fair Practices, Plaintiff attached a Request for Job Accommodation/Modification form requesting an accommodation to work from 1 pm to 9 pm out of the Bladensburg Bus Division with an updated vehicle due to medication she was taking. (S.M.F. ¶ 17); [Dkts. 28-16 & 28-17]. On June 16, 2017, Mitchell and the Office of Fair Practices offered Plaintiff a reasonable accommodation assigning her the position of "Terminal Manager at the Anacostia location with her requested work hours of 1 pm to 9 pm with

Tuesdays and Wednesdays off." (S.M.F. ¶ 18); [Dkt. 28-18].

On February 28, 2018, the EEOC mailed Plaintiff a Right-to-Sue letter for her Title VII

Charge. (S.M.F. ¶ 19); [Dkt. 28-19]. On March 23, 2018 WMATA's Office of Risk ("RISK")

issued a Return-To-Duty Certificate for Plaintiff to return to work without restrictions on March

24, 2018. (S.M.F. ¶ 20); [Dkt. 28-20]. In an email dated March 24, 2018, Plaintiff acknowledged

receipt of the March 23, 2018 Return-To-Duty Certificate. (S.M.F. ¶ 21); [Dkt. 28-21]. On April

4, 2018, Plaintiff's supervisor, Norman Williams, emailed Plaintiff that "[a]s of Sunday, March

25, 2018 [,] you have been AWOL from work…." (S.M.F. ¶ 22); [Dkt. 28-22]. On April 10, 2018,

RISK issued Plaintiff a second Return-To-Duty Certificate for Plaintiff to return to work without

restriction on April 11, 2018. (S.M.F. ¶ 23); [Dkt. 28-23]. Plaintiff did not report to duty on April

11, 2018. On April 16, 2018, Plaintiff's claim of a recurrence of her October 20, 2014 injury was

denied because it was not considered work related. (S.M.F. ¶ 24); [Dkt. 28-14]. On May 2, 2018,

Plaintiff's claim of recurrence of her July 20, 2017 injury was denied because it was not

considered work related. (S.M.F. ¶ 25); [Dkt. 28-25]. On that same date, the District of Columbia

Office of Worker's Compensation issued Plaintiff a Denial of Worker's Compensation

memorandum. (S.M.F. ¶ 26); [Dkt. 28-26].

On May 3, 2018, RISK issued Plaintiff a third Return-To-Duty Certificate for Plaintiff to

return to work without restrictions on May 4, 2018. (S.M.F. ¶ 27); [Dkt. 28-27]. On that same

date, Plaintiff was placed on administrative leave pending an investigation into her misuse of

leave. (S.M.F. ¶ 28); [Dkt. 28-28]. On May 3, 2018 at 5:22 pm, Yasmin Mitchell emails Plaintiff

the then current ADA Policy [Dkt. 28-29] and associated forms required to make an

accommodation request under the ADA Policy, including instructions for her treating physician to

8

complete the attached Interactive Process Questionnaire. (S.M.F. ¶ 29); [Dkt. 28-29]. On May 4, 2018 at 2:29 pm, Mitchell sends a follow-up email to Plaintiff attempting to clear up any confusion Plaintiff may have had about the ADA Interactive Process. (S.M.F. ¶ 30); [Dkt. 28-30].

On May 8, 2018, Williams sends Service Director of Bus Transportation Jewell Bell a memorandum justifying the reason for Plaintiff's termination. (S.M.F. ¶ 31); [Dkt. 28-31]. On June 1, 2018, Plaintiff was terminated for misconduct under WMATA Policy Instruction 7.8.5/1 due to her "continued absences without leave." (S.M.F. ¶ 32); [Dkts. 28-32, 28-33]. On June 8, 2018, Plaintiff filed this lawsuit. (S.M.F. ¶ 33); [Dkt. 1]. On January 15, 2019, Plaintiff filed her Second Amended Complaint alleging, among her other allegations under Title VII, disability discrimination in violation of the Americans with Disabilities Act ("ADA"). [Dkt. 17-1]. On October 30, 2019, Plaintiff filed her Third Amended Complaint alleging additional counts of disability discrimination under the ADA. [Dkt. 24]. Finally, on November 6, 2019, Plaintiff filed an Errata to correct its October 30, 2019 filing of her Third Amended Complaint eliminating her disability discrimination allegations under the ADA and adding one count of a failure to accommodate claim under the Rehabilitation Act of 1973. [Dkt. 26 & 26-1].

## Argument

### WMATA Is Entitled to Summary Judgment in Its Favor on Counts I (Sex Discrimination) and II (Retaliation) of the Third Amended Complaint Because She Failed to File Either Claim Within the 90-day Statute of Limitations Period under Title VII.

Plaintiff's allegations of sex discrimination-hostile work environment and/or retaliation, both asserted under Title VII, should be dismissed because Plaintiff failed to assert her claims within the 90-day statute of limitations for Title VII actions.

9

A claimant must file a civil action under Title VII "within ninety days after the giving of [an EEOC dismissal] notice." 42 U.S.C. § 2000e-5(f)(1); *Hammel v. Marsh USA, Inc*., 79 F.Supp.3d 234, 242 (D.D.C. 2015); *Mack v. WP Company*, LLC, 923 F.Supp.2d 294, 298 (D.D.C. 2013). The 90-day clock starts the day after the claimant receives the right-to-sue letter from the EEOC and it is presumed that the right-to-sue letter was mailed on the same date of issuance. *Hammel* at 242. If the date of receipt is unknown, it is presumed that the letter was received three or five days after it was mailed. *Id*. (citing *Baldwin County Welcome Ctr. V. Brown*, 466 U.S. 147, 148 n.1 (1984)).

Plaintiff's right-to-sue letter for her Title VII Charge was mailed February 28, 2018, yet she did not file her Complaint in this case until June 8, 2018, some 100 days after the mailing of her right-to-sue letter. Plaintiff was represented by the Linda Thatcher of the Thatcher Law Firm ("Thatcher") up until the time she received her right-to-sue letter from the EEOC (Able Dep. 17:10-21). The EEOC mailed her Title VII right-to-sue letter both to Plaintiff's address on record and the address of record for the Thatcher Law Firm. [Dkt. 28-34]. In a letter dated March 9, 2018, Thatcher informs Plaintiff that it received her right-to-sue letter for the Title VII Charge on March 9, 2018, which the firm forwarded to her by email that same day. [Dkt 28-34]. Plaintiff testified that Thatcher had both of her email addresses (Able Dep. 21: 17-19, 22:4-13) and that Thatcher probably emailed the right-to-sue letter to both addresses but that she did not read them (Able Dep. 20:15-22, 21:1-2). In the letter, Thatcher explicitly states that based on the 90-day statute of limitations for Title VII suits, "[t]he last day to file a lawsuit is June 7, 2018." [Dkt. 28-34]. Thatcher further emphasizes that the June 7, 2018 date is a "drop-dead deadline— i.e. if you fail to file a lawsuit under Title VII (discrimination) before your deadline, your right to sue will be lost" [Dkt. 28-34].

Because Thatcher emailed Plaintiff her right-to-sue letter on March 9, 2018, coupled with

Plaintiff's admittance that Thatcher had both email addresses used by Plaintiff at the time, it is established that Plaintiff received her Title VII right-to-sue letter on March 9, 2018 and was required to file her lawsuit alleging her Title VII allegations by Thursday, June 7, 2018. The fact that she did not file her Complaint alleging her Title VII allegations until June 8, 2018 means that both Count I and Count II must be dismissed as untimely.

### WMATA Is Entitled to Summary Judgment in Its Favor on Count I of Her Complaint Alleging Sex Discrimination Under A Hostile Work Environment Theory

Plaintiff's allegations of a hostile work environment based on gender must be dismissed because Plaintiff not only cannot show that the alleged harassing behavior was sufficiently severe or pervasive to alter the conditions of Plaintiff's employment that an abusive working environment was created, Plaintiff also cannot show that WMATA was vicariously liable for the alleged unlawful conduct.

#### *Alleged Conduct by Joseph Barber*

Before addressing the alleged unlawful conduct by Paul Hobbs, Plaintiff makes veiled reference to alleged unlawful conduct by Joseph Barber that occurred in 2012; however, Plaintiff's allegations of misconduct by Joseph Barber cannot be considered because they occurred more than 180 days before she filed her Title VII charge.

Under Title VII, a claimant must file her charge of discrimination with the EEOC within 180-days after "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5e (1); *National R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 109 (2002). Like the 90-day cause of action filing requirement, the 180-day charge filing requirement also functions as a statute of limitations for Title VII actions. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982).

While acts constituting a viable hostile environment claim may occur outside the 180-day charge filing requirement if at least one of the acts occurred within the period, the acts both before and after the limitations period must still be "adequately linked into a coherent hostile environment claim" by "involve[ing] the same type of employment actions, occur[ing] relatively frequently, and [being] perpetrated by the same managers." *Baird v. Gotbaum*, 662 F.3d 1246, 1251 (D.C. Cir. 2011).

Plaintiff's allegations against Joseph Barber occurred around August 2012 where he allegedly made a crude sexual comment to Plaintiff during a meeting to discuss an accident (Able Dep. 24:15-22, 25:1-22). At the time, Plaintiff was a bus operator out of the Montgomery Bus Division (Able Dep. 22:19-22, 23:1-4). Barber was an office manager in the Montgomery Bus Division who answered to Assistant Superintendent Jackie Smith (Able Dep. 24:1-10). Plaintiff allegedly told her union representative about Mr. Barber's remark but did not report the incident to either Jackie Smith nor the former Office of Civil Rights (now called the WMATA Office of Equal Employment Opportunity) at the time the remark was allegedly made (Able Dep. 26:1-7, 27:1-5, 29:9-18). Obviously, because the lone allegation against Barber was a stray crude remark that occurred under a different manager—Assistant Superintendent Jackie Smith as opposed to Assistant Superintendent Terri Walkup— the allegations against Barber are time barred because they do not constitute a continuous linked case of a hostile work environment.

### *Alleged Conduct by Paul Hobbs*

Plaintiff alleges that Office Manager Paul Hobbs created a hostile work environment based on sexual harassment starting in 2014; however, the instances complained of were not so severe or pervasive that it altered the terms and conditions of Plaintiff's employment thus creating a hostile

working environment. Besides, WMATA exercised reasonable care to prevent and correct promptly any alleged sexually harassing behavior by having an established sexual harassment policy that Plaintiff failed to take advantage of until she reported her harassment to WMATA's internal OEEO office on September 10, 2015. The record shows that after she reported her allegations, Hobbs was immediately placed outside Plaintiff's chain of command and her allegations were promptly investigated.

To show a hostile work environment based on sexual harassment, Plaintiff must show that (1) she is a member of a protected class; (2) she was subject to unwelcome sexual harassment; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with plaintiff's work performance and created an intimidating, hostile, or offensive working environment; and (5) the existence of respondent superior liability. *Bergbauer v. Mabus*, 934 F.Supp.2d 55, 72 (D.D.C. 2013) (citing *Davis v. Coastal Int'l Sec., Inc.*, 275 F.3d 1119, 1123 (D.C. Cir. 2002)). Sexual harassment creates a hostile work environment only if it is so "severe or pervasive [as] to alter the conditions of [the claimant's] employment and create an abusive working environment." *Taylor v. Solis*, 571 F.3d 1313, 1318 (D.C. Cir. 2009) (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)). The alleged conduct must be more than merely offensive; the conduct must be both objectively hostile, and subjectively perceived by the victim as hostile, abusive or unwelcome. *Taylor* at 72. To determine whether an environment is hostile, courts look to the totality of the circumstances, including the frequency of the alleged conduct; whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. *Morgan*, 536 U.S. at 116.

In this case, Plaintiff only alleges three separate instances by Hobbs that she believes constitutes a hostile work environment based on sexual harassment. The first alleged incident took place around 2014 when Plaintiff returned to the Montgomery Bus Division as a bus operator after a stint at the Bladensburg Bus Division. Plaintiff alleges that weeks after an exchange of telephone number between herself and Hobbs, he asked why Plaintiff did not call him, to which she replied that she was gay (Able Dep. 55:2-22). Plaintiff testified that when she told him she was gay, he replied with a crude remark about a "threesome" (Able Dep. 56:1-10). Plaintiff also testified to two other instances of physical contact between herself and Hobbs. Both instances involve Hobbs allegedly touching her hand when she would hand him paperwork. Plaintiff testified that the first incident took place when he put his hand on her hand when he handed her a work document (Able Dep. 58:2-21). Her response was just to snatch the document from him (Able Dep. 58:22-59:1-4). She then adds that Hobbs "implied" about having a "threesome" with her girlfriend after the first instance of touching her hand. (Able Dep. 61:13-19).

Plaintiff alleges that the second incident of physical contact occurred again at the clerk's window when Hobbs came up on her right side and touched her hand (Able Dep. 62:2-9). Plaintiff testified that it again involved handing her a work document (Able Dep. 61:20-22-62:1). Plaintiff did not report either incident to WMATA's OEEO office at the time they occurred. While unwelcomed by the Plaintiff, two crude remarks about a threesome and two remote incidents of Hobbs touching Plaintiff's hand while handing her a work document do not rise to the type of severe and pervasive conduct one could objectively consider a hostile work environment based on sex. Hobbs' conduct was sporadic and remote and did not alter the conditions of Plaintiff's job or job performance.

14

Even if the above instances did constitute a hostile work environment, WMATA is still not liable for Hobbs's conduct because there was a extensive sexual harassment policy in place that Plaintiff failed to utilize until she was threatened with discipline for operating her bus on a flat tire on June 29, 2015, and when she did report her allegations of sexual harassment to WMATA's OEEO office, Hobbs was promptly removed from her chain of command, an investigation was initiated, and any alleged instances of harassment ended.

When a supervisor engages in harassment that does not result in a tangible employment action, an employer has an affirmative defense to a hostile environment sexual harassment claim if (1) the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior and (2) that the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742 (1998); *Taylor* at 235. Proof that an employer had an antiharassment policy with a complaint procedure usually satisfies the first element of the defense and a demonstration that the employee unreasonably failed to use the complaint procedure of such a policy will normally satisfy the second element. *Faragher* at 807-8.

WMATA Policy/Instruction 7.1.2 is the Sexual Harassment Policy in effect during all relevant times alleged in Plaintiff's Complaint. (S.M.F. ¶ 4); [Dkt. 28-4]. On July 16, 2012, Plaintiff signed a Certification Statements Checklist acknowledging that she received and promised to read various WMATA policies including the Sexual Harassment Policy. (S.M.F. ¶ 3) [Dkt. 28-3]. Plaintiff did not report the two crude remarks about threesomes, nor the two instances of touching her hand to WMATA's OEEO at the time they occurred.

15

Hobbs did discipline Plaintiff for an accident that occurred on June 19, 2015 when she was charged with a Preventable-Minor accident in accordance with the Bus Disciplinary Matrix for striking a fixed object with her bus. (S.M.F. ¶¶ 5-8). Plaintiff received a written reprimand and one day paid training as discipline for the June 19, 2015 accident. (S.M.F. ¶ 9). Hobbs attempted to discipline Plaintiff for what he believed was another Preventable-Minor accident on June 29, 2015; however, Montgomery Bus Superintendent Terri Walkup, who was both Hobbs and Plaintiff's supervisor, reversed Hobbs's requested discipline and credited back to Plaintiff any vacation days she loss because of the discipline from the June 29, 2015 flat tire incident (Able Dep. 85:5-18). (S.M.F. ¶¶10-11); [Dkts. 28-7, 28-8, 28-9, 28-38][2]. Plaintiff finally reported her allegations against Hobbs on September 10, 2015 (Able Dep. 92:9-16; 100:20-101:15). (S.M.F. ¶ 12); [Dkt. 28-11]. After she reported her allegations to WMATA's OEEO, Hobbs was removed from Plaintiff's chain of command and Plaintiff's allegations were promptly investigated. After she reported her allegations, there were no other instances of alleged harassment by Hobbs against Plaintiff (Able Dep. 116:3-117:17). In fact, Plaintiff was promoted to Manager, Bus Service Operations in February 16, 2016. [Dkt. 28-14].

Therefore, based on the above facts, there is no actionable claim of a hostile working environment based on sexual harassment; therefore, Count I of Plaintiff's Third Amended Complaint should be dismissed.

### WMATA Is Entitled to Summary Judgment in Its Favor Because Plaintiff Cannot Prove Retaliation

---

[2] It should be noted that in Plaintiff's July 25, 2015 email to Walkup concerning Hobbs' attempted discipline for Plaintiff's July 25, 2015 incident involving the flat tire, Plaintiff never mentions being sexually harassed by Hobbs. [Dkt. 28-10].

In Count II of Plaintiff's Third Amended Complaint, she pleads retaliation under Title VII. Specifically, paragraph 27 of her Third Amended Complaint states, "Defendant and agents and employees of Defendant, retaliated against Plaintiff after she made reports of discrimination to the EEOC" (Third Amend. Compl. ¶ 27). [Dkt. 26-1]. When asked what adverse employment actions Plaintiff alleges involve unlawful discrimination and/or retaliation under Title VII, Plaintiff responded in her responses to Defendant's Interrogatories to Plaintiff, stating that "Plaintiff's termination on June 1st [sic], 2018 [and] Plaintiff was subjected to extensive on the job harassment which made the work environment unbearable as well as a number of warnings for improper citation writing" (Plt.'s Resp. to Def.'s Interrog. # 4).[3] [Dkt. 28-35]. Because Plaintiff genetically plead retaliation under Title VII, WMATA will address what undersigned counsel believes Plaintiff may assert in her opposition.

### ***Plaintiff's Termination***

Plaintiff's claim that her termination for misconduct was in retaliation for her protected activity under Title VII must be dismissed because she cannot prove causation.

To establish a claim of retaliation in violation of Title VII, Plaintiff must show that (1) she engaged in statutorily protected activity; (2) a reasonable employee would have found the challenged action materially adverse; and (3) that the employer took the action because the employee engaged in protected activity. *McGrath v. Clinton,* 666 F.3d 1377,

---

[3] Plaintiff raised for the first time in her answers to WMATA's Interrogatory #4 that a verbal reprimand for poor performance she received for writing improper citations was evidence of retaliation in this case. However, Plaintiff never alleged retaliation for writing improper citations in her Third Amended Complaint, nor her Title VII Charge. Additionally, a WMATA memorandum titled "Response to Retaliation Complaint" by Senior Employee Relations Officer Marsha Harris shows that the improper citation allegation is not related to the allegations in this lawsuit. [Dkt. 28-39].

1380 (D.C. Cir. 2012). A material adverse action must be harmful to the point that a

reasonable worker could be dissuaded from making or supporting a charge of

discrimination. *Baird v. Gotbaum*, 792 F.3d 166, 168 (D.C. Cir. 2015).

Title VII retaliation claims require proof that the desire to retaliate was the "but-

for" cause of the challenged employment action. *Univ. of Texas Sw. Med. Ctr. v. Nassar*,

570 U.S. 338, 350-51 (2013). Temporal proximity may support an inference of causation,

but only where the two events are very close in time. *Hamilton v. Geithner*, 666 F.3d

1344, 1357 (D.C. Cir. 2012). However, although not a bright line rule, a three-month or

more period between the protected activity and the adverse employment action may be too

lengthy to raise an inference of causation. *Id*. at 1358.

Plaintiff filed her internal complaint of sexual harassment against Hobbs on

September 10, 2015 (S.M.F. ¶ 12), and her Title VII Charge with the EEOC on October

27, 2015. (S.M.F. ¶ 13). Plaintiff was terminated for misconduct due to her "continued

absences without leave" on June 1, 2018. (S.M.F. ¶ 32).

Based on the following facts, Plaintiff's termination was not only non-retaliatory,

it was justified. For example, on March 23, 2018, WMATA's Office of Risk issued a

Return-To-Duty Certificate for Plaintiff to return to work without restrictions on March

24, 2018. (S.M.F. ¶ 20); [Dkt. 28-20]. Plaintiff acknowledged receipt of the March 23,

2018 Return-To-Duty Certificate in an email dated March 24, 2018 (S.M.F. ¶ 21); [Dkt.

28-21]. In an email dated April 4, 2018, Plaintiff's supervisor, Norman Williams, emailed

Plaintiff that "[a]s of Sunday March 25, 2018 you have been AWOL from work…."

(S.M.F. ¶ 22); [Dkt. 28-22]. On April 10, 2018, WMATA's Office of Risk issued Plaintiff

a second Return-To-Duty Certificate for Plaintiff to return to work without restriction on April 11, 2018 (S.M.F. ¶ 23); [Dkt. 28-23]. On April 16, 2018 and May 2, 2018, Plaintiff's claims of a recurrence of two separate old worker's compensation injuries were rejected as not being work related. (S.M.F. ¶¶ 24-25); [Dkts. 28-24, 28-25].

On May 2, 2018, the District of Columbia Office of Worker's Compensation issued Plaintiff a Memo of Denial of Workers' Compensation based on an independent medical examination report "indicating that her current condition" was not "causally related" (S.M.F. ¶ 26); [Dkt. 28-26]. On May 3, 2018, WMATA's Office of Risk issued Plaintiff a third Return-To-Duty Certificate to Plaintiff to report to work the following day on May 4, 2018 (S.M.F. ¶ 27); [Dkt. 28-27]. On the same day, Plaintiff was placed on administrative leave pending investigation into her use of leave (S.M.F. ¶ 28); [Dkt. 28-28].

On May 8, 2018, Williams wrote a memorandum justifying the reasons for Plaintiff's termination, before she was finally terminated on June 1, 2018 (S.M.F. ¶¶ 31-32); [Dkts. 28-31, 28-32, 28-33]. Despite overwhelming medical documentation both from her doctor, Dr. Paul Cooper, and independent medical professionals examining her multiple claims of worker's compensable injuries, Plaintiff was terminated for refusing to work her required shift after multiple orders to do so.

WMATA terminated the Plaintiff for misconduct. More importantly, there is over a two-and-a-half-year gap between her last protected activity under Title VII and her termination. Therefore, Plaintiff cannot prove that her termination was in retaliation for her Title VII protected activity.

19

### *Plaintiff's Retaliatory Hostile Work Environment Allegations*

Plaintiff's allegations of a retaliatory hostile work environment fail for the same reasons that her hostile work environment based on sexual harassment allegations fail—Plaintiff cannot show that the alleged retaliatory conduct taken together was so severe or pervasive that it altered the terms and conditions of her employment; thus, creating an abusive working environment. More importantly, none of the alleged actions by Hobbs occurred after she engaged in statutory protected activity under Title VII.

In addition to the proof requirements for retaliation claims under Title VII cited above, to prove a retaliatory hostile work environment, Plaintiff must also show that WMATA subjected her to "'discriminatory intimidation, ridicule, and insult' of such 'sever[ity] or pervasive[ness] [as] to alter the conditions of [her] employment and create an abusive working environment.'" *Hussain v. Nicholson*, 435 F.3d 359, 365 (D.C. Cir. 2006) (citing *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21-22 (1993))

First, none of the alleged actions by Hobbs took place after Plaintiff engaged in protected activity. Second, the alleged incidents by Hobbs were not severe or pervasive. The preventable-minor accident charged to Plaintiff on June 19, 2015 for her hitting a fixed object at Leisure World was in accordance with the Bus Disciplinary Matrix. Hobbs did attempt to discipline Plaintiff for the June 29, 2015 incident, but the alleged discipline was withdrawn by Walkup and cleared from Plaintiff's work record and any days she loss because of the withdrawn discipline was restored to Plaintiff. Plaintiff never faced any harassment by Hobbs after she reported her allegations internally to WMATA on September 10, 2015 or to the EEOC on February 10, 2016.

Therefore, because Plaintiff cannot prove any discrete forms of retaliation, nor a

retaliatory hostile work environment, Count II of her Third Amended Complaint must be dismissed.

### WMATA Enjoys Eleventh Amendment Sovereign Immunity from 42 U.S.C. § 1981 Claims.

Count III of Plaintiff's Third Amended Complaint alleging a hostile work environment based on race and gender under 42 U.S.C. § 1981 must be dismissed because of WMATA's Eleventh Amendment immunity.

It is well established that WMATA, as an arm of the State of Maryland and the Commonwealth of Virginia, is not a "person" within the meaning of 42 U.S.C. § 1983, and by extension § 1981 due to WMATA's Eleventh Amendment immunity; therefore, Plaintiff's allegations of race and gender discrimination under the statute must be dismissed. *White v. WMATA*, 306 F.Supp.3d 5, 11 (D.D.C. 2018) (citing *Thompson v. WMATA*, No. 01-7026, 2001 WL 1154420, at *1 (D.C. Cir. Aug. 9, 2001)) (affirming dismissal of § 1981 claims against WMATA due to Eleventh Amendment immunity). Besides, Plaintiff makes no allegations of racial discrimination in her Third Amended Complaint and § 1981 does not remedy allegations of gender discrimination. See *Allen-Brown v. District of Columbia*, 54 F.Supp.3d 35, 43-4 (D.D.C. 2014).

### Plaintiff's Claim in Count IV of Her Third Amended Complaint Alleging a Failure to Accommodate Under the Rehabilitation Act Fails Because WMATA Was Not Required to Suspend Pending Discipline Just Because Plaintiff Made an Accommodation Request

On November 6, 2019, Plaintiff filed an Errata [Dkt. 26] to her Third Amended Complaint substituting her initial allegations of disability discrimination under both Title I and Title II of the Americans with Disabilities Act ("ADA") for an allegation of a failure to accommodate under the

Rehabilitation Act of 1973 (Errata to Third Amend. Comp. ¶¶ 46-51). [Dkt. 26-1].

Plaintiff's failure to accommodate claim fails because while WMATA was beginning to engage Plaintiff in the interactive process, Plaintiff's continued misconduct for taking leave without permission did not require WMATA to waive her termination as discipline.

The Rehabilitation Act of 1973 prohibits discrimination against persons with disabilities by entities that receive federal financial assistance. 29 U.S.C. § 794. Because the ADA and the Rehabilitation Act are substantial similar, cases interpreting the ADA are applicable when analyzing a claim under the Rehabilitation Act.[4] *Badwal v. Univ. of D.C.,* 139 F.Supp.3d 295, 308 (D.D.C. 2015). To prevail on a claim for failure to accommodate, the plaintiff must show that (1) she was a qualified individual with a disability; (2) her employer had notice of her disability; and (3) her employer denied her request for a reasonable accommodation. *Id.* at 312 (citing *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014)). An employer is not required to provide an accommodation that the employee requests or prefers, but only a reasonable accommodation. *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284 (D.C. Cir. 1998).

More importantly, an employer may still discipline an employee with a disability for violating a conduct rule. *See The ADA: Applying Performance and Conduct Standards to Employees with Disabilities*, question 8, 2008 WL 4786697 (E.E.O.C. Guidance) *8-*9 (Sept. 25, 2008) ("If an employee's disability does not cause the misconduct, an employer may hold the individual to the same conduct standards that it applies to all other employees."); *Halpern v. Wake Forest Univ.*, 669 F.3d 454, 465 (4th Cir. 2012) ("'misconduct—even misconduct related to a

---

[4] The only key difference between the ADA and the Rehabilitation Act is that the latter prohibits discrimination "solely by reason of her or his disability" against an "otherwise qualified individual with a disability," which imposes a stricter but-for causation standard than the ADA. 29 U.S.C. § 794(a); *Drasek v. Burwell*, 121 F.Supp.3d 143, 154 (D.D.C. 2015).

disability—is not itself a disability' and may be a basis for dismissal") (quoting *Martinson v. Kinney Shoe Corp.,* 104 F.3d 683, 686 n.3 (4ᵗʰ Cir. 1997)); ( *Jones v. Nationwide Life Ins., Co.,* 696 F.3d 78, 90 (1ˢᵗ Cir. 2012) (a request for an accommodation when an employee knows that termination is imminent can be "too little, too late."); *McElwee v. County of Orange*, 700 F.3d 635, 644 (2ⁿᵈ Cir. 2012) (A claim that is as much a request to excuse past conduct as it is a request for an accommodation is unreasonable on its face.); *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1315-16 (10ᵗʰ Cir. 2017) ("The ADAAA does not require employers to reasonably accommodate an employee's disability by overlooking past misconduct— irrespective of whether the misconduct resulted from the employee's disability."); *Guzman v. Brown County*, 884 F.3d 633, 642 (7ᵗʰ Cir. 2018) ("An violation of a workplace rule, even if caused by a disability, is no defense to discipline up to and including termination.") (citing *Budde v. Kane Cnty. Forest Preserve*, 597 F.3d 860, 863 (7ᵗʰ Cir. 2010)).

In this case, Plaintiff was ordered to return to duty on March 23, 2018 based on the determination of her own physician —Dr. Paul Cooper. (S.M.F. ¶ 20); [Dkt. 28-20]. Plaintiff acknowledged receipt of the March 23, 2018 Return-To-Duty Certificate in an email to her supervisor, Norman Williams. (S.M.F. ¶ 21); [Dkt. 28-21]. On April 10, 2018, Plaintiff received a second Return-To-Duty Certificate, yet she did not report to her assigned shift. (S.M.F. ¶ 23) [Dkt. 28-23]. Despite multiple request for Plaintiff to report to work, Plaintiff refused resulting in the termination of her employment. (S.M.F. ¶¶ 22-27).

While it appears that one of Plaintiff's doctors — Dr. Paul Olumuyiwa— sent in a WMATA Treating Physician Form on May 1, 2018 recommending light duty as an accommodation [Dkt. 28-36], it is not disputed that on May 3, 2018, ADA Compliance Program

23

Manager Yasmin Mitchell, sent Plaintiff an follow-up email attaching the current documents needed to start the interactive process under WMATA's ADA Policy. (S.M.F. ¶¶ 29-30) [Dkts. 28-29, 28-30]. Although Mitchell started the interactive process, Plaintiff's justified termination for misconduct was well underway as evidenced by Plaintiff being placed on administrative leave also on May 3, 2018 (S.M.F. ¶ 28) [Dkt. 28-28].

Plaintiff cannot claim that a disability caused her to not return to duty on her assigned shift, considering that she specifically requested light duty as an accommodation and not indefinite leave. This logically means that Plaintiff was able to return to work, but simply refused to do so until she received her preferred accommodation, which WMATA was under no legal obligation to provide. Plaintiff simply requested an accommodation after she knew that she was facing discipline for ignoring two previous Return-To-Duty Certificates in a last-minute bid to stave off pending discipline.

Therefore, based on the above, Plaintiff's failure to accommodate claim under the Rehabilitation Act must be dismissed.

## <u>Conclusion</u>

Wherefore, based on the above, WMATA moves for summary judgment in its favor on all counts in Plaintiff's Third Amended Complaint.

Respectfully submitted,

WASHINGTON METROPOLITAN
AREA TRANSIT AUTHORITY


*/s/ Michael K. Guss*
Michael K. Guss #465171
Senior Counsel

24

WMATA-COUN
600 Fifth Street, N.W.
Washington, D.C.  20001
(202) 962-1468

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| KHADIJAH Z. ABLE, | : |
| | : |
| **Plaintiff,** | : |
| | : |
| **v.** | : **Case No. 1:18-cv-01372- (KBJ)** |
| | : |
| | : |
| WASHINGTON METROPOLITAN | : |
| AREA TRANSIT AUTHORITY | : |
| | : |
| **Defendant.** | : |
| _____ | : |

## ORDER

UPON CONSIDERATION of Defendant WMATA's Motion for Summary Judgment, and

the entire record of the case, it is this _____ day of _____,

2020; ORDERED, that the motion is GRANTED, and the case is dismissed with prejudice for the

reasons stated in the Defendant's motion and supporting memoranda of points and authorities.

This is a Final Order

_____
Judge Ketanji Brown Jackson

Copies to:

Michael K. Guss
Senior Counsel
WMATA-COUN
600 Fifth Street, NW
Washington, D.C. 20001

Charles Tucker
Tucker Moore Group, LLP
8181 Professional Place, Suite 117
Hyattsville, MD. 20785

1

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on this 22nd day of November 2019, a copy of the foregoing Defendant's

Motion for Summary Judgment, supporting Memorandum of Law and Points and Authorities,

Statement of Material Facts Not in Dispute, Exhibits and proposed Order was electronically

transmitted to:

Charles Tucker
Tucker Moore Group, LLP
8181 Professional Place, Suite 117
Hyattsville, MD. 20785

Counsel for Plaintiff

*/s/ Michael K. Guss*
Michael K. Guss

27