UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KHADIJAH Z. ABLE,

          Plaintiff,

v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY,

          Defendant.

Civil Action No. 1:18-cv-01372 (JMC)

**MEMORANDUM OPINION**

Khadijah Able alleges that her former employer, the Washington Metropolitan Area Transit Authority (WMATA), discriminated against her based on her sex and disability, and also retaliated against her for reporting the discrimination. WMATA filed a Motion for Summary Judgment. For the reasons stated below, the Court grants in part and denies in part WMATA's Motion.[1]

**I.  BACKGROUND**

Khadijah Able worked for WMATA as a bus operator. ECF 26-1 ¶ 5; ECF 28 at 6. In August 2012, she met with her supervisor, Joseph Barbour,[2] to discuss a bus accident. ECF 26-1 ¶ 7; ECF 28 at 6–7. Able alleges that Barbour said to her during the meeting, "You look like you

---

[1] Unless otherwise indicated, the formatting of quoted materials has been modified throughout this opinion, for example, by omitting internal quotation marks and citations, and by incorporating emphases, changes to capitalization, and other bracketed alterations therein. All pincites to documents filed on the docket are to the automatically generated ECF Page ID number that appears at the top of each page.

[2] The Court notes that Able spelled the manager's last name as "Barber," *See, e.g.*, ECF 26-1 ¶ 7, while WMATA spelled the supervisor's last name as "Barbour." *See, e.g.*, ECF 28 at 6. The Court assumes that WMATA has access to personnel records that would reveal the correct spelling of the manager's last name and therefore uses the WMATA's spelling.

1

taste good," and asked Able on a date. ECF 26-1 ¶ 7. Able further alleges that Barbour attempted to use the bus accident to pressure her into sexual relations, and that when she refused, Barbour gave Able a written reprimand for the accident that was later overturned. *Id.* ¶¶ 7–8. Able also alleges that another supervisor, Paul Hobbs, sexually harassed her. Starting in December 2013, Hobbs touched Able's hand inappropriately, asked her to have sex with him multiple times, and made other sexually suggestive comments. *Id.* ¶¶ 11–13.

Able filed a complaint with WMATA's Office of Equal Employment Opportunity against Hobbs on September 10, 2015. ECF 28 at 8. She then filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) alleging three violations of Title VII of the Civil Rights Act of 1964: gender discrimination, race discrimination, and retaliation. ECF 29-12. On February 28, 2018, the EEOC mailed Able's right-to-sue letter to Thatcher Law Firm, the law firm that had represented Able during the EEOC's investigation. ECF 29-19. Able's attorney received the Letter on March 9, 2018, and forwarded it to Able by email that same day. ECF 29-34. The attorney also sent Able a letter informing her about Title VII's 90-day statute of limitations; she told Able that June 7, 2018 was "[t]he last day to file a lawsuit" and emphasized that it was a "drop-dead deadline." *Id.* at 1.

Additionally, Able alleges that she experienced disability discrimination during her time at WMATA. According to a Workers' Compensation Order filed in 2019, on July 20, 2017, a car hit Able while she was directing traffic at an intersection. ECF 32-9 at 9. The accident was relatively minor, but Able had a history of chronic back pain and this incident provoked it. *Id.* at 8–9. In November 2017, Able sought treatment from Dr. Haddis Hagos, who performed medical tests and recommended Able not return to work until further notice. *Id.* at 9. Dr. Hagos cleared Able to return to work with no restrictions on December 16, 2017. *Id.* at 10.

Able's return to work was short-lived, however, because chronic back pain caused her to stop working on January 30, 2018. *Id.* at 11. She consulted with multiple doctors in the following months to treat her pain, but these doctors gave her conflicting advice and different return-to-work dates. One doctor advised Able that she could return to work without restrictions as early as March 24, 2018. ECF 32-2. Other doctors prescribed later return-to-work dates or recommended that Able receive "light duty accommodations." *See* ECF 32-3; ECF 32-4; ECF 32-7; ECF 32-8.

These conflicting return-to-work dates appear to have caused confusion between WMATA and Able. WMATA expected Able to return to work on March 24, 2018 and scheduled her for an eight-hour shift the evening of March 25. ECF 29-31 at 1. Able emailed her supervisor that morning and said that she would not be able work because of her condition. *Id.* Able and her supervisor discussed Able's return to work during the following months while Able met with doctors, but Able remained absent due to her chronic back pain. *Id.* at 1–2.

On May 3, 2018, Able was placed on administrative leave while WMATA investigated her situation. ECF 29-28. That same day, Yasmin Mitchell, WMATA's ADA Compliance Program Manager, emailed Able instructions for requesting a disability accommodation. ECF 29-29. Able emailed back that afternoon. ECF 29-30. She attached forms requesting an accommodation for her disability, albeit not the right forms. *Id*. Mitchell responded and noted that she could "accept" the forms Able had sent. *Id.* Mitchell also noted that more information was needed from Able's doctors to facilitate the "interactive process" of determining an appropriate accommodation. *Id.*

However, five days later, on May 8, 2018, Able's supervisor recommended her termination. ECF 29-31 at 2. He said that Able committed "misconduct" by repeatedly failing to show up for work, and that her absences caused him to lose confidence in her ability to work effectively. *Id*. Able was officially terminated on June 1, 2018. ECF 29-32. Her termination letter

3

stated that WMATA had concluded that she "failed to report to work after being cleared to do so which resulted in [her] continued absences without leave." *Id.* at 1. Neither Able's termination letter, nor the recommendation for her termination, mentioned Able's request for an accommodation. *See generally id.*; ECF 29-31.

Able sued WMATA in this Court. ECF 1. After amending her Complaint a few times, she alleged that WMATA violated Title VII of the Civil Rights Act of 1964 by discriminating against her based on her sex and then retaliating against her after she reported the discrimination to the EEOC. ECF 26-1 at ¶¶ 30–40. She also alleged that WMATA was liable for sex discrimination under 42 U.S.C. § 1981, *id.* ¶¶ 41–45, and for disability discrimination under the Rehabilitation Act,[3] *id.* ¶¶ 46–51. WMATA answered Able's Complaint, ECF 27, then filed a Motion for Summary Judgment, ECF 28. Able responded, ECF 32, and WMATA replied, ECF 33. The Court then asked the Parties to file supplemental briefing to clarify their positions on Able's failure-to-accommodate claim. ECF 34. The Parties complied. ECF 37; ECF 40.

## II.    LEGAL STANDARD

Summary judgment is appropriate if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The Court's task at this stage is not to "determine the truth of the matter, but instead [to] decide only whether there is a genuine issue [of material fact] for trial." *Barnett v. PA Consulting Grp. Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013). A fact is "material" if it has the potential to change the substantive

---

[3] Able filed a Notice of Errata clarifying that she meant to bring a disability discrimination claim under the Rehabilitation Act, not the Americans with Disabilities Act. Because WMATA does not object to the clarification, *see* ECF 28 at 22–23, the Court accepts the Third Amended Complaint in ECF 26-1 as the operative Complaint.

4

outcome of the litigation. *See Anderson*, 477 U.S. at 248; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). A dispute is "genuine" if a reasonable jury could determine that the evidence warrants a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895.

The non-moving party must present enough evidence for a jury to "reasonably find for" it. *Anderson*, 477 U.S. at 252. When analyzing a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Grosdidier v Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23 (D.C. Cir. 2013). The moving party can support its motion by identifying the portions of the record that it believes demonstrate the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c)(1)(A). However, the non-moving party cannot rest upon their pleadings; they must set forth "affirmative evidence showing a genuine issue for trial." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).

**III.   ANALYSIS**

Able brought four claims—two claims under Title VII, one claim under 42 U.S.C. § 1981, and one claim under the Rehabilitation Act. The Court grants WMATA's Motion for Summary Judgment as to all claims except Able's Rehabilitation Act claim.

**A. Title VII Claims**

WMATA argues that Able's two Title VII claims—one premised on sex discrimination, and the other on retaliation—should be dismissed because Able did not timely file her lawsuit. ECF 28 at 10–12. WMATA is right. A Title VII claimant must file their court complaint within ninety days after receiving notice of the EEOC's final action (right-to sue-letter). 42 U.S.C. § 2000e-5(f)(1). This statute of limitations is calculated in accordance with the time computation standards outlined in Fed. R. Civ. P. 6(a). The day of the event that triggers the statute of limitations

5

is excluded from the time computation and thus the clock begins ticking the day after that event occurs. Fed. R. Civ. P. 6(a)(1)(A); *see also Hammel v. Marsh USA, Inc.*, 79 F. Supp. 3d 234, 242 (D.D.C. 2015) (applying Rule 6(a)(1) to the statute of limitations at issue here). Here, the Parties agree that the triggering event is March 9, 2018, the day Able received notice of the EEOC's right-to-sue letter. *Hogue v. Roach*, 967 F. Supp. 7, 8 (D.D.C. 1997) (noting that the statute of limitations begins upon "receipt of an EEOC right-to-sue notice"); *Akridge v. Gallaudet Univ.*, 729 F. Supp. 2d 172, 177–78 (D.D.C. 2010) (same); *Hammel*, 79 F. Supp. 3d at 242 (same). So, the next day, March 10, 2018, was Day One on the statute of limitations clock. June 7, 2018 was Day Ninety. By filing her lawsuit on June 8, 2018, she missed her deadline by one day. ECF 1.

The Court prefers to decide cases on their merits. But courts apply Title VII's statute of limitations strictly and "will dismiss a suit for missing the deadline by even one day." *Woodruff v. Peters*, 482 F.3d 521, 525 (D.C. Cir. 2007). Indeed, courts have dismissed cases for such minor tardiness. *See Smith v. Dalton*, 971 F. Supp. 1, 3 (D.D.C. 1997) (dismissing a claim for missing the statute of limitations deadline by one day); *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 581 (D.C. Cir. 1998) (same for two-day tardiness). Because Able has not argued that WMATA waived its statute-of-limitations defense or put forth any reason to think that equitable tolling applies,[4] the Court grants WMATA's Motion for Summary Judgment as to Able's two Title VII claims.

---

[4] Rather, Able argues that she calculated her deadline correctly and that both March 9th (the date she received her right-to-sue letter) and March 10th (the day after the triggering event) are excluded from the statute of limitations computation. ECF 32 at 6–7. Her mistake, however, is not a basis upon which the Court can excuse her failure to file this case by the deadline.

### B. 42 U.S.C. § 1981 Claim

WMATA also argues that Able's hostile work environment claim brought under 42 U.S.C. § 1981 should be dismissed because the Eleventh Amendment makes WMATA immune from suit for damages. ECF 28 at 22. That is correct—WMATA is an arm of the state and is therefore entitled to immunity under the Eleventh Amendment. *Thompson v. WMATA*, 2001 WL 1154420, at *1 (D.C. Cir. 2001). Able makes no argument to the contrary. Because the Court lacks subject matter jurisdiction over this claim, the Court grants WMATA's Motion for Summary Judgment as to this claim.

### C. Rehabilitation Act Claim

Able also brings a failure-to-accommodate claim under the Rehabilitation Act. ECF 26-1 ¶¶ 46–51. To prevail on this claim, Able bears the burden of producing evidence showing that (1) she was a qualified individual with a disability; (2) WMATA had notice of her disability; and (3) WMATA denied her request for a reasonable accommodation. *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014). WMATA briefly argues that Able did not carry her burden on the first element, though the heart of its Motion contends that WMATA fulfilled its obligations under the third element.

Regarding the first element, Able has produced enough evidence for a reasonable jury to conclude that she has a disability. Able argues that she has spondylosis that causes chronic back pain and prevents her from working without accommodation. ECF 26-1 ¶¶ 23–24, 46–52. The record contains medical documents that support her claim. ECF 32-8; ECF 32-9 at 19. WMATA is free to challenge this evidence at trial, but a reasonable jury could review it and find that Able's

physical impairment and chronic back pain substantially impeded her ability to work. *See* 29 U.S.C. § 705(9), (20)(A)(i).[5]

As to the third element, because disabilities often demand unique accommodations, the process for determining the appropriate accommodation for any workplace involves "a flexible give-and-take between employer and employee." *Ward*, 762 F.3d at 32. The two parties are expected to work together to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Id.* (quoting 29 C.F.R. § 1630.2(o)(3)). Both parties share an obligation to engage in this process in good faith and communicate effectively. *See id.* If either the employee or employer cuts short the interactive process, or does not participate in good faith, they will be found responsible for the failure to identify a reasonable accommodation. *Id.*

The Parties disagree about the facts behind the interactive process that related to Able's request for an accommodation in 2018. Able contends that she requested an accommodation in January 2018 and continued to communicate with various WMATA supervisors until her termination, ECF 39-1 ¶ 16, while WMATA argues that Able did not request an accommodation until May 2018, after she had missed more than three months of work, ECF 28 at 24–25.

These factual disputes make summary judgment inappropriate on this claim. Based on the evidence presented, a reasonable jury could conclude that WMATA did not engage in the interactive process in good faith. Able's supervisor knew she had a disability on January 30, 2018—the first day of Able's absence from work—and that she planned to submit an

---

[5] The Court notes that WMATA also argues that light duty modifications are not available for Able's position. ECF 37 at 6. However, the record does not contain enough evidence to support this assertion. Additionally, because WMATA cut off the interactive process early, it is unclear whether any other accommodations could have been provided to help Able continue working.

Case 1:18-cv-01372-JMC   Document 41   Filed 03/31/23   Page 9 of 10

accommodation request. ECF 40-2 at 1 (noting that Able emailed her supervisor). Able continued to communicate with WMATA employees, including her supervisor, about her disability and her desire for an accommodation. *See* ECF 40-1 (emails with workers compensation employee on March 9, 2018); ECF 29-22 (emails with her supervisor in April 2018 noting emergency room visits); ECF 29-30 (emails with ADA Compliance Program Manager in May 2018 discussing accommodation request). Once WMATA knew that Able had a desire for an accommodation, it was obligated to engage in an interactive process to gather information and determine the appropriate accommodation. *See Ward*, 762 F.3d at 32 (citing 29 C.F.R. 1630.2(o)(3) for the proposition that "it may be necessary for the covered entity to initiate an informal, interactive process"); *see also Woodruff v. LaHood*, 777 F. Supp. 2d 33, 41 (D.D.C. 2011); *Floyd v. Lee*, 85 F. Supp. 3d 482, 506 (D.D.C. 2015).

The Parties dispute whether Able actually submitted an accommodation request before May 2018. *Compare* ECF 39-1 ¶ 16 *and* ECF 32-9 (Exhibit L) (accommodation request that appears to have been submitted in January 2018) *with* ECF 40-2 (stating that the OEEO had not received requests for accommodation from Able since 2017). Because the Court is obligated to construe the evidence in the light most favorable to Able and draw all reasonable inference in her favor at this stage of the litigation, *Grosdidier*, 709 F.3d at 23, the Court assumes that Able submitted a request for accommodation in January 2018. But even if she did not, the fact that Able's supervisor knew about her disability and her desire for an accommodation gave WMATA sufficient notice to trigger their obligations in the interactive process. *Floyd*, 85 F. Supp. 3d at 506 ("Proper notice must simply enable the employer to know of both the disability and the employee's desire for accommodations for that disability.").

Instead of engaging with Able to figure out what accommodations would help her return to work, her supervisors began to count her absences. Ultimately, WMATA argues that these absences formed the basis for Able's termination. *See* ECF 29-31; ECF 29-32. While WMATA is correct that a disability does not immunize employees from being punished for violating conduct rules, ECF 37 at 3, an employer may not ignore a timely request for accommodation that could have avoided the employee's termination. *Drasek v. Burwell*, 121 F. Supp. 3d 143, 156–58 (D.D.C. 2015) (applying *Singh v. George Wash. Univ. Sch. of Med. & Health Scis.*, 508 F.3d 1097, 1105 (D.C. Cir. 2007)).

Summary judgment is not appropriate in this case because a reasonable jury could find that WMATA failed to engage in good faith in the interactive process. WMATA contends that Able was disciplined for refusing to show up to work, but a reasonable jury could conclude that WMATA had notice that Able's disability prevented her from working without accommodations and that WMATA refused to work with Able to determine what accommodations could help her return to work. The factual question of who is responsible for the breakdown in the interactive process is best left to a jury at trial rather than this Court at summary judgment.

## IV. CONCLUSION

The Court ORDERS that WMATA's Motion for Summary Judgment is GRANTED as to Able's two claims brought under Title VII and her claim brought under 42 U.S.C. § 1981. But the Court ORDERS that the Motion is DENIED as to Able's Rehabilitation Act claim.

**SO ORDERED.**

DATE: March 31, 2023

_____
Jia M. Cobb
U.S. District Court Judge